IN THE UNITED STATES DISCTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STO-COTE PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> EZ ICE RINKS, INC. <br><br> Defendant. | Case No.: _____ <br><br> **COMPLAINT FOR DECLARATORY JUDGEMENT OF NONINFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Sto-Cote Products, Inc. dba NiceRink ("Sto-Cote"/"NiceRink"/ "Plaintiff") hereby alleges for its Complaint against Defendant EZ Ice Rinks, Inc. ("EZ Ice"/ "Defendant") as follows:

### NATURE AND HISTORY OF THE ACTION

1. This is a declaratory judgment action arising under the patent laws of the United States, Title 35 of the United States Code, seeking a declaratory judgment that Plaintiff does not infringe any valid or enforceable claim of U.S. Patent No. 11,712,617 ("the '617 patent).

2. Sto-Cote, an Illinois Corporation, currently, and for more than 30 years, has operated as a product and service provider in the outdoor ice rink market designing and marketing ice-rink designs, components, and services that make outdoor ice rink building easy, accessible, and unforgettable for families and businesses in North America.

3. EZ Ice has alleged on multiple occasions since September 2023, and continues to presently allege, that Sto-Cote has infringed and is infringing the '617 patent.

4. EZ Ice's allegations of patent infringement against Sto-Cote patent have placed a cloud of uncertainty and risk over Sto-Cote's products and services and have created a justiciable controversy between EZ Ice and Sto-Cote.

5. On September 27, 2023, EZ Ice, through counsel, send a first demand letter to Sto-Cote (the "September 2023 Demand").

6. The EZ Ice September 2023 Demand notified Sto-Cote of the '617 patent, claimed that the '617 patent covered "multiple and various aspects of EZ Ice's backyard ice rink products", and claimed that EZ Ice and Sto-Cote were direct competitors.

7. EZ Ice, in its September 2023 Demand claimed that Sto-Cote "sells competing products throughout the United States that violate one or more claims of the '617 patent."

8. EZ Ice, in its September 2023 Demand, claimed that Sto-Cote products that violated the '617 patent, included, but were not limited to, NiceRink's strappable SPIKELESS brackets and straps, and demanded that Sto-Cote immediately cease selling such products.

9. EZ Ice, in its September 2023 Demand, demanded that Sto-Cote remove any reference to these products and any related products from NiceRink's website and other marketing materials by close of business on September 29, 2023.

10. EZ Ice, in its September 2023 Demand, stated that "[i]f NiceRink continues to offer these products for sale, EZ Ice will consider taking further legal actions to remedy these violations", thus threatening Sto-Cote with litigation if it refused to stop selling what EZ Ice claimed to be infringing products.

11. On September 28, 2023, EZ Ice, through counsel, again communicated to Sto-Cote, through counsel, reiterating the "seriousness" of its allegations, and its demand that Sto-Cote comply with its demands by September 28th, 2023.

12. On September 28, 2023, Sto-Cote, through counsel, indicated that it did not intend to comply with EZ Ice's demands.

13. On October 20, 2023, EZ Ice, through it's owner, directly contacted the President of Sto-Cote in a detailed written communication directed reiterating the infringement allegations and offering the possibility of cooperation agreement and seeking an opportunity to discuss the issues and possible cooperation.

14. On October 26, 2023, Sto-Cote, through counsel, responded to the September 2023 Demand denying infringement and providing substantial detail regarding product differences, prior art relevant to the '617 patent, and additional information in an attempt to constructively engage.

15. On October 27, 2023, the owner of EZ Ice again directly initiated contact in writing with the President of Sto-Cote in a very detailed written communication in which the owner of EZ Ice engaged in a discussion of the history of the ice rink market, past installations of ice rinks, a reiteration of EZ Ice's claim that Sto-Cote was infringing EZ Ice's patents, a possible merger of EZ Ice and Sto-Cote, future product plans, and insisted that if there were no merger agreement and Sto-Cote did not stop selling its allegedly infringing products, he would sue Sto-Cote, stating "I plan to take full legal action to sue you/Nice Rink."

16. On October 31, 2023, the owner of EZ Ice again initiated contact in writing with the President of Sto-Cote, indicating that if the infringement allegations were not successfully resolved by 6pm MT on November 6, EZ Ice would "file and service NiceRink for patent infringement."

17. In the October 31 communication from the owner of EZ Ice to the President of Sto-Cote, EZ Ice encouraged that Sto-Cote settle the matter out of court, referenced the number of claims in the '617 patent, noted the independent claims in the '617 patent and claimed that there were being "clearly violated" by Sto-Cote, and mentioned again that EZ Ice intended to proceed with a patent infringement lawsuit.

18. In the October 31 communication from the owner of EZ Ice to the President of Sto-Cote, EZ Ice again discussed an offer to merge, and providing additional details about a potential merger.

19. The owner of EZ Ice ended the October 31 communication by again referencing the alleged patent infringement by Sto-Cote, commenting that a lawsuit would "create irreparable scar tissue", and indicated that EZ Ice and its financial backers would use "any means necessary" to address "extinguish any and all patent violations", specifically mentioning treble damages in addition to the "normal" cost and time of a lawsuit.

20. On November 1, 2023, the owner of EZ Ice again communicated in writing to counsel for Sto-Cote, rejecting a proposed royalty arrangement, and reiterating that that the only options for Sto-Cote were to stop selling immediately, continue selling and risk a lawsuit, or agree to something else. In this communication, EZ Ice again mentioned a possible merger, reiterated the November 6 deadline, and noting that damages would be costly for Sto-Cote.

21. At all times since the initial September 2023 demand letter from EZ Ice, Sto-Cote has steadfastly denied engaging in any infringement of EZ Ice's '617 patent.

22. In spite of Sto-Cote's continued denial of infringement, Sto-Cote agreed with EZ Ice on November 6 of 2023, that Sto-Cote would cease certain activities and advertising at that time.

23. Subsequent to the agreement, including specifically between November 6 and November 22nd of 2023, EZ Ice's owner communicated in writing multiple times to Sto-Cote and counsel for Sto-Cote seeking enforcement of the terms of that agreement.

24. On December 3, 2024, an Ex-Parte Re Examination was filed by counsel for Sto-Cote with the Patent Trial and Appeal Board seeking to invalidate all claims of the '617 Patent.

25. During the Re Examination, in March of 2025, the CEO of EZ Ice and CEO of Sto-Cote met face-to-face in Minnesota at the "Let's Play Hockey" Expo and discussed

possible coexistence in the ice rink market and EZ Ice's possible interest in purchasing NiceRink.

26. During the Re Examination, counsel for EZ Ice contacted counsel for EZ Ice via email on April 4, 2025, regarding possible additional discussions between EZ Ice and Sto-Cote regarding coexistence in the ice rink market, and regarding possible interest by EZ Ice in purchasing NiceRink, and regarding possible direct communication between the CEOs of the two companies to discuss those topics.

27. On April 21, 2025, after numerous written communications between counsel for EZ Ice and counsel for Sto Cote, counsel for Sto-Cote communicated by letter with counsel for EZ Ice in response to counsel for EZ Ice's communication of April 4, declining to provide financials for Sto-Cote and setting forth requirements for any future discussions between EZ Ice and Sto-Cote regarding coexistence discussions and EZ Ice's possible interest in purchasing Sto-Cote.

28. On November 4, 2025, the Re-Exam process completed for the '617 Patent, with only a handful of the original '617 Patent claims remaining in their initial form, and the other claims all being changed, canceled, or new claims.

29. Subsequent to the completion of the Re-Exam, in which EZ Ice amended a majority of its claims, on November 14, 2025, EZ Ice again, through counsel, communicated a demand to cease and desist to Sto-Cote by means of a letter (the "November 2025 Demand").

30. The November 14, 2025 cease and desist demand letter included specific allegation of infringements of independent claims 1, 38, 45, 74, 102, 103 and 104 of '617 patent, and further indicated that if Sto-Cote continued to see the accused products, EZ Ice would consider the infringement to be willful, specifically listing the types of damages they would pursue, and demanding that prompt and immediate action must be taken by Sto-Cote by November 21, 2025.

31. On December 12, 2025, Sto-Cote, through counsel, responded in writing to EZ Ice's November 14 2025 demand with a detailed rejection of EZ Ice's infringement allegations, including a discussion of prosecution history and intervening rights, and a demand that EZ Ice abandon the infringement allegations.

32. On December 19, 2025, EZ Ice, through counsel, sent a formal letter rejecting Sto-Cote's claim interpretation and prosecution history arguments, reasserting that Sto-Cote is infringing and claiming that the alleged infringement is willful.

33. In the December 19 letter, EZ Ice reasserted its demand that Sto-Cote stop selling ice rinks with the strap, and any other products that it claims infringe the '617 patent, and demanded that prompt and immediate action must be taken by Sto-Cote, insisting on a response by December 29, 2025.

34. In sum, EZ Ice, for over two years since its initial demand letter in September of 2023 and including through it's December 19, 2025 demand letter, has repeatedly accused Sto-Cote of infringement, and threatened litigation against Sto-Cote over the '617 Patent.

35. EZ Ice's actions have created a real and immediate controversy between EZ Ice and Sto-Cote as to whether Sto-Cote's products and/or services infringe any claims of the '617 Patent.

36. The numerous and continuing communications from EZ Ice to Sto-Cote over the past two plus years, wherein EZ Ice threatens to sue Sto-Cote for damages (including punitive damages for willful infringement) unless Sto-Cote stops selling and marketing certain of its products, demonstrate that it is highly likely that Defendant EZ Ice will sue Sto-Cote for infringement of the '617 Patent. In the meantime, the cloud of EZ Ice's allegations and threatened litigation hangs over Sto-Cote.

37. As set forth herein, Sto-Cote does not infringe any claim of the '617 Patent. Therefore, an actual and justiciable controversy exists between the parties as to whether Sto-Cote's products and/or services infringe any claims of the EZ Ice '617 Patent. The facts and allegations recited herein show that there is a real, immediate, and justiciable

controversy concerning these issues. A judicial declaration is necessary to determine the respective rights of the parties regarding the '617 Patent, and Sto-Cote respectfully seeks a judicial declaration that the '617 Patents is not infringed by any Sto-Cote products and/or services.

38. EZ Ice has repeatedly threatened Sto-Cote with lawsuits asserting patent infringement of the '617 patent related to ice rinks, and its threats have become increasingly strident, culminating in its latest demand of December, 2025.

39. In demanding that Sto-Cote to cease and desist from selling certain products that EZ Ice claims infringe the '617 Patent, EZ Ice has, among other things: (a) sent multiple written communications to Sto-Cote in the period between at least September 2023 and December 2025 asserting that Sto-Cote products and services infringe the '617 Patent, and including identification of certain claims; (b) sent multiple written communications to Sto-Cote claiming that Sto-Cote's alleged infringement is "willful" and/or will subject Sto-Cote to punitive/treble damages; (c) provided charts and exhibits that allegedly show Sto-Cote's infringement; (d) reached out to express an interest in possible cooperation or a merger or sale, and then used threats of litigation to attempt to move Sto-Cote in a cooperation/merger direction; (e) negotiated regarding possible royalty terms; (f) communicated an intent to sue Sto-Cote by communicating that EZ Ice's investors are prepared to do "whatever it takes" to stop the alleged infringement.

40. All told, EZ Ice's threats regarding patent litigation and its purported offers to cooperate or merge or purchase between September 2023 and the present involve, among other things, dozens of written communications between EZ Ice and Sto-Cote, the sharing of proposed term details, the sharing of detailed infringement and non-infringement information, a face-to-face meeting between the CEO of EZ Ice and the President of Sto-Cote in Minnesota, and the negotiation and enforcement of a temporary agreement.

## THE PARTIES

7

41. Plaintiff Sto-Cote, doing business as NiceRink, is an Illinois Corporation having its registered corporate address at 1555 Main Street, Antioch, IL 60002, and a principle place of business at 218 South Road, Genoa City, WI 53128.

42. Plaintiff is a pioneer and leader and innovator in the outdoor ice rink market and had been marketing and selling outdoor ice rink products and services for at least the past 30 years. Plaintiff has been selling spikeless versions of its rink brackets/kits since at least 2000.

43. Plaintiff has thousands of customers and product installations in Illinois, including in this district.

44. Plaintiff's main customers are individual homeowners, but also include businesses, municipalities, Park & Rec agencies, and resorts.

45. Defendant EZ Ice Rinks, Inc. is a Massachusetts corporation with principal place of business at 1282 Boylston Street, Unit 1514, Boston, MA 02215.

46. Defendant EZ Ice claims to own or be a licensee of the '617 Patent, and claims to be entitled to enforce the '617 Patent rights against Plaintiff.

47. Defendant EZ Ice does business in this district, including both direct sales to customers in this district, and sales through at least one channel of distribution.

48. Defendant EZ Ice's website, as of the date of filing of this lawsuit, shows that Defendant EZ Ice has sold its ice rink products to multiple customers in this judicial district.

49. Defendant EZ Ice's website, as of the date of filing of this lawsuit, shows Defendant EZ Ice targets sales into this judicial district through the retailer "Pure Hockey" located at 1230 75th St, Downers Grove, IL 60516.

50. Defendant EZ Ice has directly targeted customers in this district with direct email advertising and communication in order to solicit additional ice rink business for EZ Ice in this district.

8

51. On information and belief, Defendant EZ Ice has entered into a contract with Pure Hockey to sell its ice rink products in this district in Illinois.

52. Defendant EZ Ice entered into an agreement with Sto-Cote in November of 2023 regarding limitations on certain Sto-Cote product offerings and marketing/advertising, and took steps in this judicial district to enforce that agreement, including, on multiple occasions, communicating to Sto-Cote purported instances of advertising not complying with the limitations and pursuing Sto-Cote removal of that advertising.

## JURISDICTION AND VENUE

53. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and under the Patent Laws of the United States, 35 U.S.C. §§ 1 et seq.

54. This Court has subject matter jurisdiction over the claims alleged in this action at least under 28 U.S.C. §§ 1331, 1332, 1338, 2201, and 2202, because this Court has exclusive jurisdiction over declaratory judgment claims arising under the Patent Laws pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

55. This Court can provide the relief sought in this Declaratory Judgment Complaint because an actual case and controversy exists between the parties within the scope of this Court's jurisdiction pursuant to 28 U.S.C. § 2201, at least because EZ Ice has repeatedly threatened Sto-Cote with patent infringement litigation and has repeatedly threatened to seek punitive damages for alleged willful infringement of the '617 Patent despite the fact that Sto-Cote does not infringe, and has not infringed, any claims of the '617 Patent. EZ Ice's actions have created a real, live, immediate, and justiciable case or controversy between EZ Ice and Sto-Cote.

56. EZ Ice has consciously, repeatedly, and purposefully directed activities at Sto-Cote, an Illinois Corporation that resides in this District. As previously described, Sto-Cote and EZ Ice have had extensive pre-suit communications over the past 2 plus years,

beginning with EZ Ice's first demand letter in September 2023, regarding the '617 Patent and EZ Ice's allegations of infringement.

57.     Furthermore, EZ Ice has consciously, repeatedly, and purposefully directed activities at Sto-Cote, an Illinois Corporation that resides in this District, by initiating and continuing extensive communications with Sto-Cote regarding a possible royalty agreement, cooperation agreement, and merger, including the exchange of terms related to those possible agreements. In addition, EZ Ice also came proximate to this District (Minnesota) for an in-person meeting with the President of Sto-Cote at a trade show to discuss the '617 Patent and possible cooperation or a merger and purchase.

58.     Furthermore, EZ Ice has consciously, repeatedly, and purposefully directed activities at Sto-Cote, an Illinois Corporation that resides in this District, by entering into an agreement with Sto-Cote relating to the '617 Patent, and enforcing that agreement, in November of 2023.

59.      EZ Ice purposefully directed all of these activities relating to the '617 Patent at Sto-Cote in this District, and this action arises out of and directly relates to EZ Ice's contacts with Sto-Cote in this District.

60.     In doing so, EZ Ice has established sufficient minimum contacts with the Northern District of Illinois such that EZ Ice is subject to specific personal jurisdiction in this action. The exercise of personal jurisdiction based on these repeated and pertinent contacts does not offend traditional notions of fairness and substantial justice.

61.     Venue in this District is proper under 28 U.S.C. §§ 1391(b), (c), and (d) with respect to EZ Ice's declaratory judgment claims for at least the reason that EZ Ice regularly conducts business in this District, EZ Ice is subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claim occurred in this . More specifically with respect to personal jurisdiction, as discussed above, this Court has personal jurisdiction over EZ Ice because EZ Ice has engaged in actions in this District that form the basis of Sto-Cote's claims against EZ Ice—including but not limited to the

10

extensive pre-suit communications and interactions with Sto-Cote related to EZ Ice's infringement allegations and litigation threats, extensive communications and interactions with Sto-Cote regarding EZ Ice's possible interest in cooperation, a merger, or an acquisition, and EZ Ice's 2023 agreement and enforcement of that agreement regarding Sto-Cote's product offerings and marketing activities.

62. An actual and justiciable controversy exists under 28 U.S.C. §§ 2201-2202 between Sto-Cote and EZ Ice as to whether the 617 Patent is infringed by the Sto-Cote products and/or services that EZ Ice alleged to infringe the '617 Patent in its numerous and increasingly strident demand letters threatening a patent infringement lawsuit.

63. In addition to having specific personal jurisdiction over EZ Ice as outlined above, this court has general personal jurisdiction over EZ Ice for at least the reason that EZ Ice has specifically identified this district as once of its markets, does business in this district directly and through at least one retailer, and has sold product to customers residing in this judicial district, as shown on EZ Ice's website as of the date of filing of this website.

64. Furthermore, EZ Ice has entered into agreements with businesses in this district, including at least the distributor listed on its website and Sto-Cote. EZ Ice also has contractual relationships with the customers in this district who have purchased its ice rink products, as shown in the testimonial section of EZ Ice's website as of the date of this filing.

65. This court has general personal jurisdiction over EZ Ice at least because, on information and belief, EZ Ice has continuous and systematic contacts within this District, including conducting substantial and regular business therein through its retailer operating in this district, and its customers in this district to whom it has sold ice rink products.

66. On information and belief, EZ Ice derives substantial revenue from Illinois residents.

67. EZ Ice has intentionally invoked and purposefully availed itself of the jurisdiction of Illinois courts.

11

**PATENTS-IN-SUIT**

68. The '617 Patent, entitled "ICE SKATING RINK STRUCTURE AND METHOD," states on its face that it issued on August 1, 2023. The reexamination certificate issued on True and correct copies of the '617 Patent, and the reexam certification for the '617 Patent, are attached as Exhibits A and B, respectively.

**ACTS GIVING RISE TO THIS ACTION**

69. As described above, Sto-Cote and all of its customers and distributors are presently faced with a substantial risk of litigation by EZ Ice for allegedly infringing the '617 Patent.

**FIRST CLAIM FOR RELIEF**

(Declaratory Judgment That Sto-Cote Does Not Infringe The '617 Patent)

70. Sto-Cote repeats and realleges each and every allegation contained in paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Sto-Cote, on the one hand, and EZ Ice, on the other, regarding whether Sto-Cote infringes any claim of the '617 Patent.

72. Sto-Cote does not infringe, and has not infringed, any claim of the '617 patent. For example, by way of example, claim 1 of the '617 patent, which EZ Ice claims is infringed by Sto-Cote, is reproduced below:

Claim 1: A kit for constructing a self-standing ice skating rink structure, the kit comprising: side boards configured to collectively define an area, each of the side boards extending from a first end defined by a connection element to a second end defined by a complementary connection element; board holding members each configured to

12

releasably secure at least a portion of at least one of the side boards to hold the at least one of the side boards in a vertical orientation; and

tension members each configured to be attached to at least one of the board holding members and to traverse the area, wherein at least one of the board holding members comprises a receptacle, and at least one of the tension members is configured to be attached to the receptacle.

73. Sto-Cote does not infringe any claims of the '617 patent at least because no Sto-Cote product or service meets or embodies at least the following limitations as recited in the claims alleged by EZ Ice to be infringed: "wherein at least one of the board holding members comprises a receptacle, and at least one of the tension members is configured to be attached to the receptacle." More specifically, Plaintiff does not have a receptacle as defined/narrowed during prosecution or the location and structure of the receptacle as reinforced in the amendments of the reexamination.

74. The above claim limitation, not present in any Sto-Cote product, is present in every asserted claim of the '617 patent, such that consequently, Sto-Cote does not infringe any asserted claim of the '617 Patent.

75. In view of the foregoing, there is an actual, justiciable, substantial, and immediate controversy between Sto-Cote and EZ Ice regarding whether Sto-Cote infringes any claim of the '617 Patent.

76. Sto-Cote is entitled to judgment declaring that it does not infringe the '617 Patent. Sto-Cote has no adequate remedy at law.

77. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

78. More specifically, Sto-Cote, through the manufacture, use, and/or sale of Sto-Cote's products and services has not and does not infringe, induce infringement, or contribute to the infringement of any enforceable claim of the '617 Patent, either literally or under the doctrine of equivalents.

13

## PRAYER FOR RELIEF

Sto-Cote respectfully requests the following relief:

A. That the Court enter a judgment declaring that Sto-Cote has not infringed and does not infringe any valid and enforceable claim of the '617 Patent asserted by EZ Ice to be infringed by Sto-Cote;

B. That Sto-Cote is the prevailing party in this action, and that the Court declare that this case is exceptional under 35 U.S.C. § 285 and award Sto-Cote its attorneys' fees, costs, and expenses incurred in this action;

C. That the Court award Sto-Cote any and all other relief to which Sto-Cote may show itself to be entitled; and

E. That the Court award Sto-Cote any other relief as the Court may deem just, equitable, and proper.

## JURY DEMAND

Sto-Cote hereby demands a jury trial on all issues and claims so triable.

Respectfully submitted, 29 December 2025, by: */s/Genna S. Hibbs*

    Genna S. Hibbs (IL Bar no. 6306165)
    Hibbs Law, LLC
    1050 Country Club Rd., #1390
    Woodstock, IL 60098
    Office: 773.888.2134
    gh@hibbslaw.com
    Attorney for Plaintiff